IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

_____

| | | |
|---|---|---|
| GURNEY LEE GARRETT, | ) | Cause No. CV 07-25-H-DWM-RKS |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | FINDINGS AND RECOMMENDATION |
| | ) | OF U.S. MAGISTRATE JUDGE |
| MICHAEL MENAHAN; ATTORNEY | ) | |
| GENERAL OF THE STATE OF | ) | |
| MONTANA, | ) | |
| | ) | |
| Respondents. | ) | |

_____

On May 7, 2007, Petitioner Gurney Lee Garrett filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. 2254. Petitioner is a state prisoner proceeding pro se. Though he challenges a Montana conviction, he is currently incarcerated in Appleton, Minnesota.

On October 5, 2007, this Court issued an Order to Show Cause, explaining that each claim of his federal petition appears to be procedurally barred due to Petitioner's failure to fairly and correctly raise his federal issues in state court. See Order to Petitioner to Show Cause (doc. 21) ("Order to Show Cause") at 2-8.[1] On October 26, 2007, Petitioner timely responded to the Order.

---

[1] All page numbers cited in this Order correspond to the Court's electronic record.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 1

See Pet'r Responsive Br. to Order (doc. 26) ("Pet'r Resp.") at 1.

**I. Background**

The following factual background is based on the Petition and the Orders Petitioner attached to it.

Sometime before September 2004, Petitioner was convicted of driving under the influence ("DUI") in Montana's First Judicial District Court, Broadwater County. He was sentenced to serve nine months' probation, including six months in the W.A.T.C.H. program at Warm Springs, and apparently was also sentenced to a three-year prison sentence with all time suspended. See Pet. (doc. 1) at 3. Petitioner states that he served two months on probation and then violated the conditions of his probation when he received two citations in the City of Helena for criminal trespass and theft. He failed to appear on those charges, and a warrant was issued for his arrest.[2]  See Pet. at 3.

On September 17, 2004, Petitioner was arrested in Lewis and Clark County, which is also in Montana's First Judicial District. The arresting deputy contacted Petitioner's probation officer in Broadwater County and the probation officer authorized a breath test. Petitioner's blood alcohol level was 0.1 or higher. He was then placed under arrest on a new DUI charge as well as charges of driving with a suspended license and driving without liability insurance. See Pet. at 3-4; Order at 1, Garrett v. State, No. ADV 2005-723 (Mont. First Jud. Dist. Dec. 29, 2005) (doc. 1-4).

Both in open court proceedings and in discussions with his attorneys, Petitioner continually demanded to be transported to Broadwater County to address the probation violation charge. See Pet. at 4-7, 12-13. Nonetheless, proceedings in Lewis and Clark County on the new DUI and other

---

[2] It is not clear whether the warrant was predicated on his failure to appear, on violation of his probation, or on the charges of criminal trespass and theft.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 2

charges were prosecuted to completion. Petitioner pled guilty.[3] In December 2004, on the new DUI charge, he was sentenced to serve 13 months in the custody of the Department of Corrections, with a recommendation for placement in the W.A.T.C.H. program, and five years in the Montana State Prison, with the prison term suspended.

On the same day that he was sentenced in Lewis and Clark County, Petitioner was transported to Broadwater County for proceedings on the charge of violating his probation. It appears that Petitioner's probation was revoked and he was sentenced to serve three years in prison. See Pet. at 8 (stating that Petitioner "pled guilty to the charge on the revocation and the 3 years that was suspended (Was Ordered).") (emphasis in original). Petitioner then requested a recess to speak with his attorney. He asked his attorney to ask the prosecutor to agree to suspension of the three-year sentence and to allow it to run concurrently with his Lewis and Clark County sentence. Instead, the prosecutor suggested a five-year sentence, presumably suspended, to run consecutive to the Lewis and Clark County sentence. Petitioner claims that, later that day, the prosecution had the Judge's previous order imposing the three-year prison sentence amended. He also claims that the Broadwater County revocation sentence was "indexed" under the Lewis and Clark County sentence, whereas the Broadwater County sentence should have been controlling because it was imposed first. See Pet. at 8-10.

Petitioner did not appeal in either case. He was denied admission to the W.A.T.C.H. program, placed at Montana State Prison, and discharged to the suspended portion of his sentence on October 14, 2005. On December 7, 2005, a probation officer reported to the trial court that

---

[3] Petitioner apparently also responded the charges of criminal trespass and theft in Justice Court during this time.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 3

Petitioner had absconded from supervision.  See Order at 1-2, Garrett, No. ADV 2005-723.

Sometime in 2005 – presumably before he was reported to have absconded – Petitioner filed a petition for postconviction relief in Lewis and Clark County.  It was denied on December 29, 2005.  See Order at 2-3, Garrett, No. ADV 2005-723.

On June 22, 2006, the Clerk of the District Court in Lewis and Clark County received a letter from Petitioner referring to "getting an appeal on that Post Conviction Relief that the Court denied and that is pending."  Order at 1, Garrett v. State, No. 06-0490 (Mont. Dec. 20, 2006) (doc. 1-3).  The Clerk liberally construed the letter as a notice of appeal, and a case was duly opened by the Montana Supreme Court.  That court concluded that Petitioner failed to show good cause for his failure to file a timely notice of appeal and dismissed the appeal with prejudice on December 20, 2006.  See id. at 2.[4]  Petitioner's request for rehearing was denied on January 24, 2007.  See Garrett v. State, No. DA 06-0490 (Mont. Jan. 24, 2007) (doc. 1-2).

On May 7, 2007, Petitioner filed a petition for writ of habeas corpus in this Court, along with numerous and repetitive motions and objections.  For his relief, Petitioner seeks vacatur of the remaining portions of both the Lewis and Clark County sentence and the Broadwater County sentence.  He explains that this would allow him to be moved to a lower custody level in the Minnesota facility where he is currently detained and would, in turn, give him access to treatment programs.  See Pet. at 16-17.

**II. Petitioner's Allegations**

Petitioner contends that his Fourteenth Amendment right to due process was violated because

---

[4] The second page of this Order in the Court's record is page 3.  Petitioner apparently omitted copying the second page.  The result, however, is clear.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 4

the new charges in Lewis and Clark County were prosecuted to completion before he was transported to Broadwater County to face charges of violating his probation. Petitioner claims he should have been taken before a judge in Broadwater County within 36 hours of his arrest and tried on that charge first "instead of sitting in Detention in Lewis and Clark County for 2 months." Pet. at 6. He also claims that his counsel in Lewis and Clark County, Jeremy Gersovitz, was ineffective because he failed to raise this argument, because he failed to consider preliminary proceedings, such as an omnibus hearing or presentence investigation, and because he conspired to delay his transport to Broadwater County. See Pet. at 3-7; id. at 11-14.

Petitioner also asserts that his constitutional protection against double jeopardy was violated when his Broadwater County sentence was altered between the time it was pronounced in open court and the end of the same day, when the prosecution allegedly had the sentence amended. See Pet. at 8-10.

**III. Analysis**

**A. Procedural Default**

The doctrine of procedural default bars this Court from considering any claim in the federal petition. The issue of procedural default may be raised in a court's preliminary screening "when the default is obvious from the face of the petition and when recognizing the default would 'further the interests of comity, federalism, and judicial efficiency.'" Vang v. State of Nevada, 329 F.3d 1069, 1073 (9th Cir. 2003) (quoting Boyd v. Thompson, 147 F.3d 1124, 1128 (9th Cir. 1998)). Following is the Court's analysis of how the doctrine applies. This analysis was previously presented to Petitioner and he had an opportunity to respond to it. See Order to Show Cause at 5-6.

Here, procedural default is clear on the face of the Petition and the documents attached to it. As to the claims arising from the Lewis and Clark County proceedings, the Montana Supreme Court held that Petitioner failed to show cause why he should be permitted to pursue an out-of-time appeal of the trial court's denial of his petition for postconviction relief. As to the double jeopardy claim, Petitioner gives no indication that he ever filed a petition for postconviction relief or a motion to correct the written judgment to make it conform to the sentence orally pronounced, see, e.g., State v. Lane, 957 P.2d 9, 18 ¶ 49 (Mont. 1998). A petition for post-conviction relief is no longer available to Petitioner because the one-year state statute of limitations has already expired. See Mont. Code Ann. § 46-21-102(1) (2003). All of Petitioner's claims are procedurally barred in state court.

Under most circumstances, claims that are procedurally barred from going forward in state court also cannot be raised in federal court. The state's procedural bars are generally adequate and independent grounds for declining to grant relief and are not subject to federal review. Harris v. Reed, 489 U.S. 255, 263 (1989). In such cases, a petitioner is said to have procedurally defaulted on his claims for relief, and his case cannot be considered by a federal court.[5]

---

[5] The Montana Supreme Court has consistently applied Mont. Code Ann. §§ 46-21-102(1) and 46-21-105(1)(b), without considering federal procedural or substantive law, to bar review of issues that are not timely raised or that could have been raised on direct appeal or in a previous post-conviction petition. See, e.g., Watson v. State, 61 P.3d 759, 761 ¶¶ 10-11 (Mont. 2002) (considering whether claim could have been decided on direct appeal and so was procedurally barred); State v. Whitehorn, 50 P.3d 121, 129 ¶ 49 (Mont. 2002) (as amended) (reiterating requirement that post-conviction petitions be timely filed); State v. Hanson, 988 P.2d 299, 301 ¶ 14 (Mont. 1999) (explaining that Montana state courts must consistently apply the statutory bar to prevent the abuse of post-conviction relief by criminal defendants).

The Court is aware that, before the issuance of Peña v. State, 100 P.3d 154 (Mont. 2004), the Montana Supreme Court occasionally granted habeas relief to petitioners who were committed to more than five years in the custody of the Department of Corrections. See, e.g., Peterson v. Mahoney, No. 03-739 (Mont. Dec. 16, 2003) (unpublished decision) (referring to Mont. Code Ann. § 46-18-201(1)(e) (1997)). However, Petitioner was sentenced after Peña was issued, and he was not sentenced to more than five years in the custody of the Department of Corrections. The procedural bar was firmly established and consistently applied at the time he should have filed his state postconviction petition and thus

Petitioner argues that he made a reasonable, good-faith effort to comply with the State's rule regarding an out-of-time appeal. He contends that "the Clerk of Court" – which court, he does not say – "knew the whereabouts of the petitioner" on December 27, 2005,[6] yet "interfer[]ed with the petitioners ability to comply 'or' failed to take reasonable steps to facilitate the petitioners compliance with the Applicable State Procedure." See Pet'r Resp. at 5-6. He explains:

> Petitioner was incarcerated in North Dakota on a shuttle states warrant, issued by District Court Judge Dorothy McCarter on the 9th day of December, 2005.
> Petitioner was arrested and incarcerated by the Shuttle States Warrant on the 23rd of Dec. 2005 and the Clerk of Court, Prosecutor, and other State Officials of the State of Montana, knew the whereabouts of the petitioner at this time Because of the Probation Violation and the State drawing up a (Governors Warrant) for (Extradition) The Clerk of Court could/should have sent his (Order) of Denial for Post Conviction Relief to the address, of the other Faxxed Documents. That was an error on part of the State Officials at Lewis and Clark Courthouse.

Pet'r Aff. (doc. 26-2) at 7. See also Pet'r Resp. Ex. D (doc. 26-6) at 4-5 (arrest warrant issued by Judge McCarter on December 9, 2005, and faxed by Helena Police Department to Stark County, North Dakota, on December 23, 205). Petitioner concludes that "the Clerk of Court along with other State Officials, knew the whereabouts of the petitioner and that he was incarcerated [in North Dakota]," Pet'r Aff. at 14, so that it is their fault, and not his, if he did not timely receive notice of the December 29, 2005, order denying post-conviction relief.

Petitioner's argument is not persuasive. First, it was the Helena Police Department, not the Clerk of Court, who faxed the warrant to North Dakota. See Pet'r Resp. Ex. D at 5. More fundamentally, even if the clerk who docketed the order denying the petition for post-conviction

---

gives rise to procedural bar in this Court.

[6] Page 5 of Petitioner's Response to the Order to Show Cause gives the date as December 27, 2006. This appears to be a mistake. See, e.g., Pet'r Aff. (doc. 26-2) at 7. The Court will assume, for Petitioner's benefit, that he means December 27, 2005.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 7

relief was the same person who docketed the warrant and faxed it to North Dakota, that person would have had no legal responsibility whatever to recognize that the order should be faxed to North Dakota. Petitioner himself had every opportunity, and sole responsibility, to relay his whereabouts to anyone with whom he wanted to keep in touch.

Petitioner asserts that his case is comparable to James v. Kentucky, 466 U.S. 361 (1984), cited in Pet'r Resp. at 6, where the Kentucky Supreme Court refused to consider the petitioner's argument because he requested an "admonition" rather than an "instruction" under state law. The United States Supreme Court, though acknowledging that state law distinguished between admonitions and instructions, held that "Kentucky's distinction between admonitions and instructions is not the sort of firmly established and regularly followed state practice that can prevent implementation of federal constitutional rights." Id. at 348-49. This case, by contrast, features a habeas petitioner who absconded from supervision and did not receive timely notice of the issuance of an order denying his petition for postconviction relief because he did not contact the clerk of court with a current mailing address. Petitioner does not claim that the order was not mailed to his address of record. He claims, instead, that the clerk did not look for him hard enough. No provision of Montana or federal law places the burden on the clerk to discover a new mailing address for a petitioner who has failed to update it himself – least of all a petitioner who absconded from supervision.

Nor is the Court persuaded by Petitioner's claim that the circumstances he describes amount to "cause" sufficient to excuse his procedural default in state court. See Order to Show Cause at 7-8. Cause, as Petitioner was informed, must be something "external to the defense." Poland v. Stewart,

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 8

117 F.3d 1094, 1105 (9th Cir. 1997) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)).  If Petitioner had maintained a correct mailing address with the state court, any deficiency in service on him would at least have warranted inquiry.  His own failure to take the minimal, simple step of reporting an address change certainly does not constitute a good-faith effort to comply with the time limitations on filing a notice of appeal.  His case is not remotely comparable to Alexander v. Dugger, 841 F.2d 371 (11th Cir. 1988), cited in Pet'r Resp. at 6, where the petitioner mailed a motion for rehearing that, for unknown reasons, was not filed, and where there was evidence in the state record that he had, in fact, mailed such a motion.  See Alexander, 841 F.2d at 374.  Similarly, Loveland v. Hatcher, 231 F.3d 640 (9th Cir. 2000), cited in Pet'r Resp. at 6, is inapposite, because the petitioner in that case mistakenly believed that retained counsel was acting for him.  See id. at 644.  Here, Petitioner does not claim that he was relying on an attorney to act on his behalf.  Instead, he attempts to make court staff into his own agents and impute to them a responsibility to track him down so an order could be served on him.  To state that proposition is to refute it.

The Court can only conclude that Petitioner has failed to show any legally cognizable reason why all of the claims in his federal petition should not be dismissed with prejudice as procedurally barred.

**B. Merits**

In addition, the duty that Petitioner seeks to impose on state court staff has no relevance to his double jeopardy claim.  That is the only claim that could have any merit; clearly, it is at least a violation of due process, and perhaps double jeopardy, for a prosecutor to change a sentence – assuming, for the sake of argument, that that is what happened.  But Petitioner does not dispute the

Court's finding that he never raised that claim in the state court.  See Order to Show Cause at 6.[7] Therefore, that claim would remain procedurally defaulted, even if this Court were to indulge Petitioner's extraordinary claim that court staff had some responsibility to locate him.

And, if the Court were to address Petitioner's claims regarding the order of the proceedings against him, it could only say that there is no federal constitutional right to have a revocation proceeding in one county take precedence over a criminal proceeding in another county. Accordingly, all of Petitioner's claims that do not relate to the prosecution's alleged alteration of his sentence are conclusively lacking in merit.

**IV. Certificate of Appealability**

**A. Governing Law**

Pursuant to 28 U.S.C. § 2253(c), "[a] certificate of appealability ['COA'] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  See Hohn v. United States, 524 U.S. 236 (1998); Lambright v. Stewart, 220 F.3d 1022, 1024 (9th Cir. 2000).  The standard of a "substantial showing" can be satisfied on an issue-by-issue basis.  Lambright, 220 F.3d at 1024 (citing 28 U.S.C. § 2253(c)(3)).

> [I]n order to make a substantial showing of the denial of a federal right a petitioner ... "must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'"

Lozada v. Deeds, 498 U.S. 430, 432 (1991) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).  See also Slack v. McDaniel, 529 U.S. 473, 484 (2000) (petitioner "must demonstrate that

---

[7] "As to the double jeopardy claim, Petitioner gives no indication that he ever filed a petition for postconviction relief or a motion to correct the written judgment to make it conform to the sentence orally pronounced, see, e.g., State v. Lane, 957 P.2d 9, 18 ¶ 49 (Mont. 1998)."

reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."). Thus, a petitioner may obtain a COA even if he does not establish that he will prevail on the merits. The COA inquiry seeks only to prevent frivolous appeals from wasting judicial resources, while still affording petitioners an opportunity to show potential for merit. Lambright, 220 F.3d at 1025. Any doubt as to whether a petitioner has met the standard is resolved in his favor. Id.

Where, as here, the district court dismisses a claim on procedural grounds, the court must decide whether "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Lambright, 220 F.3d at 1026 (quoting Slack, 529 U.S. at 484).

The COA must indicate which issues satisfy the required showing, 28 U.S.C. § 2253(c)(3), and the Court must "state why a certificate should *not* issue." Fed. R. App. P. 22(b)(1) (emphasis added). The Court need not explain why a certificate *should* issue. Id.

**B. Discussion**

As set forth in the analysis above, Petitioner has failed to demonstrate any excuse for his failure to raise in state court his double-jeopardy claim, which alleges that the prosecution altered his sentence after it was pronounced in open court. That claim is procedurally barred.

The cause proffered to excuse default of Petitioner's other claims is that the state court clerk's office staff did not work hard enough to locate him so that he could be served with the order denying his petition for postconviction relief. However, court staff have no legal obligation under

either Montana or federal law to search for or locate litigants in order to serve court documents on them. It was Petitioner's obligation, no one else's, to keep his mailing address current. Consequently, all of Petitioner's claims are procedurally barred. There is no room for reasonable jurists to disagree. A COA should be denied as there is no reason to encourage a higher court to address the issues in this case.

Based on the foregoing, the Court enters the following:

## RECOMMENDATION

The Petition (doc. 2) should be DISMISSED WITH PREJUDICE as procedurally barred. A certificate of appealability should be DENIED.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Petitioner may serve and file written objections to this Findings and Recommendations within ten (10) business days of the date entered as indicated on the Notice of Electronic Filing. A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations. Failure to timely file written objections may bar a de novo determination by the district judge.

<u>Petitioner must immediately inform the Court of any change in his mailing address.</u>

DATED this <u>20th</u> day of November, 2007.

/s/ Keith Strong
Keith Strong
United States Magistrate Judge